UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES LAMONT BRITT, | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:17-cv-2158 (JCH) |
| v. | : | |
| | : | |
| UNKNOWN OFFICERS, et al., | : | JUNE 12, 2019 |
| Defendants. | : | |
| | : | |

**RULING RE: MOTION TO DISMISS (Doc. No. 37)**

On December 27, 2017, the plaintiff, Charles Lamont Britt ("Britt"), filed a complaint pro se pursuant to title 42, section 1983, against several New Haven police officials, later identified as Gary C. Monk, Christian J. Bruckhart, Michael F. Criscoulo, Derek L. Wener, and Nicholas W. Katz, and a cooperating witness named John Pettigrew. Compl. (Doc. No. 1). He later filed two Amended Complaints (Doc. Nos. 15, 16). This court permitted Britt's Fourth Amendment claims for unreasonable search and malicious prosecution, as stated in the Second Amended Complaint (Doc. No. 16), to proceed against Monk, Bruckhart, Criscoulo, Wener, and Katz, but dismissed the claims against Pettigrew. Ruling Re: Second Am. Compl. (Doc. No. 17).

On February 21, 2019, Britt filed a Motion for Leave to File a Third Amended Complaint "adding [a] new claim with exhibits to support [the] new claim and to better specify damages sought." Mot. for Leave to File Am. Compl. (Doc. No. 34). The court granted the Motion to Amend absent objection and docketed the third amended complaint as a separate entry. Order (Doc. No. 39); 3d Am. Compl. (Doc. No. 40). Monk, Bruckhart, Criscoulo, Wener, and Katz have moved to dismiss the new

defamation claim that Britt has asserted in his Third Amended Complaint.[1] Mot. to Dismiss (Doc. No. 37); Mem. of Law in Supp. of Defs.' Preemptive Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 38). They contend that the defamation claim is barred by the statute of limitations set forth in section 52-597 of the Connecticut General Statutes, and alternatively, Britt has failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss at 1; Defs.' Mem. at 7-8. Britt has filed an Opposition to the defendants' Motion. Britt's Obj. to Defs.' Mot. to Dismiss ("Britt's Opp'n") (Doc. No. 42). For the following reasons, the Motion to Dismiss the defamation claim is GRANTED.

I.  **STANDARD OF REVIEW**

To survive a Motion to Dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. This standard is not a probability requirement; a complaint must show, not merely allege, that the plaintiff is entitled to relief. See id.

---

[1] The defendants filed their Motion to Dismiss when Britt's Motion for Leave to File the Third Amended Complaint was still pending. After the court granted Britt's Motion and docketed the Third Amended Complaint, the defendants filed an Answer to the Third Amended Complaint. Answer and Affirmative Defenses (Doc. No. 41). They raised statute of limitations as an affirmative defense in their Answer. Id. at 5.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" LaMagna v. Brown, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting Ashcroft, 556 U.S. at 678); see also Amaker v. New York State Dep't of Corr. Services 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (quoting Rolon v. Henneman, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). This is true whether the plaintiff has counsel or appears pro se. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). However, "[w]here . . . the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

In deciding a motion to dismiss, the court may consider "statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). The court may also "take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases." Lynn v. McCormick, No. 17-CV-1183 (CS), 2017 WL 6507112, at *3 (S.D.N.Y. Dec. 18, 2017)

(citing Lou v. Trutex, Inc., 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012)); see also Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## II. FACTUAL ALLEGATIONS

On October 7, 2015, the defendants, who collectively formed the Narcotics Enforcement Unit of the New Haven Police Department ("NHPD"), developed a plan to use a cooperating witness to make a controlled purchase of narcotics inside Britt's home at 358 Orange Street, Apartment 616, in New Haven. 3d Am. Compl. ¶¶ 1-2. The defendants "alleged th[at] [Britt's] home was the target of an ongoing investigation." Id., ¶ 2. However, there had been "no prior transactions" between Britt and the cooperating witness, and Britt had been hospitalized at Yale New Haven Hospital during the month leading up to the planned controlled purchase. Id., ¶ 4. The employees of Elm City Communities/Housing Authority of New Haven, where Britt resided, were not aware of any investigation into Britt's apartment. Id., ¶ 5.

The defendants provided the witness with covert surveillance equipment to capture the controlled purchase. Id., ¶ 6. The witness then went to Britt's apartment and asked him "where to get perks at." Id., ¶ 7. The witness had not been invited to Britt's apartment and was, therefore, trespassing on the property. Id., ¶ 8. The witness entered Britt's apartment and recorded Britt without his knowledge. Id., ¶ 9. Later that day, the defendants released a NHPD Incident Investigation Report with their findings from the witness. Id., ¶ 5. This was the first time the staff at Britt's apartment complex learned about his apartment being the subject of a police investigation. Id. The

4

defendants did not have probable cause or a search warrant to surveil Britt's home. Id., ¶ 11.

"The [d]efendants defamed [Britt] in the . . . Investigation Report . . . with the false statement of [his] [a]partment being a location where illegal drugs are bought and sold on a daily basis among other untruthful allegations. [Britt's] landlord, [the Elm City Communities], acted on the[se] defamatory allegations and drafted a pre-termination notice dated December 1, 2015."[2] Id., ¶¶ 13-14.

On November 3, 2015, the defendants secured an arrest warrant for Britt, and they arrested him on November 16, based on information they learned from the controlled purchase on October 7. Id., ¶ 12. As a result of the arrest, Britt was unable to receive medical and Supplemental Nutrition Assistance Program ("SNAP") benefits from the State of Connecticut Department of Social Services.[3] Id., ¶ 15. He was also unable to follow up on a social security disability claim that had been pending at the time. Id., ¶ 16. The loss of medical and SNAP benefits prevented Britt from receiving his mental health medication and caused him to suffer from mental anguish and malnutrition. Id., ¶¶ 17-20.

---

[2] Britt has filed a separate complaint against his landlord for evicting him without cause. Britt v. Elm City Communities, Inc., No. 3:17-cv-2159 (JCH) (D. Conn.). That case is currently pending in this court.

[3] The SNAP program is a government program that helps eligible individuals and families afford the cost of food at supermarkets, grocery stores, and farmers' markets. SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM, OVERVIEW, http://portal.ct.gov/dss/SNA-P/Supplemental-Nutrition-Assistance-Program---SNAP.

On August 2, 2017, a Connecticut Superior Court judge dismissed the charges that arose from the narcotics purchase on October 7, 2015. 2d Am. Compl. (Doc. No. 16), ¶ 16. On October 24, 2017, Britt filed a Complaint against the defendants with the NHPD Internal Affairs Division. Id. In response, NHPD Sergeant Wolcheski wrote that the surveillance on October 7, 2015 was authorized by the State's Attorney's Office and was reasonable because the investigation began outside the apartment in the public domain. Pl.'s Ex. D (Doc. No. 16 at 25). Thus, the Internal Affairs Division concluded that Britt's complaint was "unfounded." Id.

## III. ANALYSIS

The court already permitted Britt's Fourth Amendment unreasonable search and malicious prosecution claims, as stated in the Second Amended Complaint, to proceed against the defendants. Ruling Re: Second Am. Compl. (Doc. No. 17) at 10. The Motion to Dismiss is limited to the newly asserted state law claim for defamation in the Third Amended Complaint. Defs.' Mem. at 7-8. The defendants contend that this claim is (1) barred by two-year statute of limitations set forth in § 52-597, and (2) unsupported by the facts. Id. Britt counters that the claim is not time-barred and is factually sufficient to proceed.

"Since Congress did not enact a statute of limitations governing actions brought under [section] 1983, the courts must borrow a state statute of limitations." Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994). "The statute to be borrowed is the one that is 'most appropriate' . . . or 'most analogous,' . . . so long as it is not inconsistent with federal law or policy." Id. (citations omitted). In this District, claims for violations of

6

constitutional rights under section 1983 are governed by a three-year statute of limitations under Connecticut General Statutes § 52-577.  Id. at 134.

However, Britt's defamation claim against the defendants is a state law violation claim, not a claim for violation of his constitutional rights.  See Abdul-Salaam v. Lobo-Wadley, 665 F. Supp. 2d 96, 103 (D. Conn. 2009) (explaining that defamation is an issue of state law, not federal constitutional law).  Claims for defamation under Connecticut law are governed by the two-year statute of limitations set forth in section 52-597, which provides, "No action for libel or slander shall be brought but within two years from the date of the act complained of."  See Lafferty v. Jones, No. 3:18-CV-1156 (JCH), 2018 WL 5793791, at **4-5 (D. Conn. Nov. 5, 2018); see also Silano v. Scarnuly-Grasso, No. 3:12-CV-1732 (JBA), 2017 WL 2802875, at *9 (D. Conn. June 28, 2017).

The defendants contend that Britt's defamation claim is time-barred because the Investigation Report, which stated that his apartment was being investigated for narcotics transaction, was released on October 7, 2015, the day of the controlled purchase, and Britt did not assert his defamation claim until February 21, 2019, more than three years later.  Defs.' Mem. at 8.  Under Connecticut law, "[t]he statute of limitations for a defamation claim begins on the date of publication, [and] a new cause of action arises with each publication."  Lafferty, 2018 WL 5793791, at *3 (quoting Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 224, 837 A.2d 759 (2004)).  Although it is not clear when the Investigation Report was published, Britt's exhibits show that the defendants' statements therein were written on October 7, 2015; 3d Am. Compl. at 14-18; and Britt's landlord issued the eviction notice on December 1, 2015.  Id. at 35-38.

7

Thus, the official publication of the Investigation Report occurred sometime between October 7, 2015 and December 1, 2015.

Britt counters that the limitations period did not begin to run until August 2, 2017, the date the Connecticut Superior Court dismissed the criminal charges stemming from the October 7, 2015 investigation. Britt's Opp'n at 3. The Connecticut Supreme Court has held that, "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute [of limitations] does not begin to run until that course of conduct is completed." Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 241, 429 A.2d 486 (1980) (internal quotations omitted). However, because each alleged defamatory statement constitutes a separate cause of action, Connecticut courts have declined to apply the continuing course of conduct doctrine to defamation claims. See Ravalese v. Lertora, No. HHD-CV-136042237 (NFE), 2017 WL 659957, at **2-3 (Conn. Super. Ct. Jan. 4, 2017); Brady v. Bickford, No. KNL-CV-116007541 (TAZ), 2015 WL 1727591, at *6 (Conn. Super. Ct. Mar. 13, 2015). In this case, the defamatory statements were contained in the Investigation Report, which was published, at the latest, on December 1, 2015. The court does not agree that the two-year statute of limitations should be tolled until Britt's criminal charges were dismissed in 2017.

Alternatively, the plaintiff contends that he raised his defamation claim in his initial Complaint, which he filed on December 27, 2017. Britt's Opp'n at 3. He relies on one allegation therein, which reads, "As a result of the untruthful allegations that stem from the unlawful (surveillance) conduct of the above mentioned [d]efendants, my civil rights were violated under the color of law, and I have suffered/am suffering much

8

distress, such as (a) I've been evicted from my apartment, and I've been homeless for approximately two (2) years." Compl., ¶ 17.  "In order to establish a claim for defamation under Connecticut law, a plaintiff must prove that: '(1) the defendant[s] published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.'" U.S. ex rel. Smith v. Yale University, 415 F. Supp. 2d 58, 108 (D. Conn. 2006) (quoting Iosa v. Gentiva Health Services, Inc., 299 F. Supp. 2d 29, 37-38 (D. Conn. 2004)).  Britt's single allegation in his initial Complaint does not state a plausible defamation claim under this standard.  Even if it did, the claim would still be time-barred because the alleged statement was published, at the latest, on December 1, 2015, and Britt did not sign his initial complaint until December 13, 2017.  Compl. at p.8.  Moreover, when he moved for leave to file the third amended complaint, Britt expressly stated that he was "adding a new claim."[4]  Mot. for Leave to File Am. Compl.

Based on the foregoing, the court concludes that Britt's defamation claim is time-barred under section 52-597.[5]  Therefore, the defamation claim against the defendants is dismissed.

---

[4] Even if the amendment to add the defamation claim related back to the initial Complaint, the two-year state statute of limitations on defamation claims had run by the time Britt filed that Complaint. See Lafferty, 2018 WL 5793791 at *4; Fed. R. Civ. P. 15 ("An amendment to a pleading relates back to the date of the original pleading when. . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.")

[5] Because the court agrees that the defamation claim is time-barred, it need not consider the defendants' alternative argument that Britt's allegations are insufficient to state a plausible defamation claim.

**ORDER**

The Motion to Dismiss the defamation claim (Doc. No. 37) is GRANTED. The case may proceed on the Fourth Amendment unreasonable search and malicious prosecution claims as stated in the Third Amended Complaint (Doc. No. 40).

**SO ORDERED.**

Dated this 12th day of June 2019 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge